UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60127-Cr-DIMITROULEAS/Seltzer

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KEVIN TROUTMAN,

    Defendant.
_____/

## MOTION TO SUPPRESS EVIDENCE

Defendant, Kevin Troutman, moves this Court to enter an Order suppressing all the evidence the government seized on May 4, 2007, when police officers entered and searched--in the absence of a search warrant or consent or other justification–a residence located at 4322 N. W. 203 Street, Miami, Florida ("the house" hereafter). In support of this request Troutman submits the following Statement of the Case and Facts and Memorandum of Law.

### Statement of the Case and Facts

On May 4, 2007, police officers went to 4322 N. W. 203 Street, Miami, Florida, to arrest Troutman on a federal arrest warrant issued after the return of Indictment No. 07-60127-Cr-DIMITROULEAS. This warrant did not, as a matter of law, authorize a search of the house at this address because the return of an indictment does not provide probable cause to search the residence of the person indicted. United States v. Rubio, 727 F.2d 786 (9th Cir. 1984)

1

> ...[t]he function of the grand jury is to determine whether there is sufficient probable cause to require an accused to stand trial before a petit jury. Because that determination is so similar to the elements of probable cause for an arrest, an indictment " 'fair upon its face,' and returned by a 'properly constituted grand jury' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry."  The same cannot be said for a search warrant.  The Fourth Amendment requires that warrants may issue only upon a determination of probable cause by a "neutral and detached magistrate."  The magistrate must be provided with sufficient facts from which he may draw the inferences and form the conclusions necessary to a determination of probable cause... As the Supreme Court reaffirmed in <u>Illinois v. Gates</u>, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.  The warrant affidavit's mere recitation of the indictment is precisely that--the conclusion of another body, and a body whose function differs substantially from the magistrate's constitutional duty to assess probable cause. (Citations omitted). 727 F.2d at 794-5.

See also: <u>United States v. Defalco</u>, 509 F. Supp. 127 (S.D. Fla. 1981) (Finding that "a magistrate must make his own determination as to probable cause and may not

delegate that responsibility to a grand jury."). The police did not have a search warrant for the house *at this time*.

Shortly after the officers arrived in the vicinity of the house and began surveilling it, they saw an unknown male arrive in a Ford Explorer at 4322 N. W. 203 Street, Miami, Florida. This unknown male (#1) did not get out of his vehicle. Then the officers saw a female arrive in a Chevrolet sedan; after she exited her car, she went into the house. Finally, Troutman arrived in a Monte Carlo. He too got out of his car and went inside the house. (Troutman had a key to this residence, stayed there frequently, had unfettered access to the premises, and kept his possessions there. Under these circumstances he has standing to challenge the constitutionality of the intrusion that occurred in this case. United States v. Cooper, 203 F. 3d 1279 (11th Cir. 2000).) An unknown male (#2) remained in the passenger seat of the Monte Carlo.

Troutman remained in the house for a short period of time. He came out accompanied by the female who had arrived just before Troutman. Troutman walked to the Ford Explorer which was parked on the swale next to the street. There the police arrested him. The execution of the arrest warrant outside and away from the residence forecloses reliance upon the authority to conduct a limited search of a residence when executing an arrest warrant granted by Maryland v. Buie, 494 U. S. 325, 337 (1990)("The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an

individual posing a danger to those on the arrest scene."). See also: United States v. Chaves, 169 F. 3d 687(11th Cir. 1999).

> The Court in *Buie* permitted police officers to undertake protective sweeps in these instances because of the compelling " interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack," emphasizing that the intrusion was limited to " no more than necessary to protect the officer from harm." (Citation omitted). 169 F. 3d at 692.

The police also detained the unknown male (#2) who had remained in the passenger seat of the Monte Carlo. The female was not detained or restrained in any way. Likewise, the other unknown male (#1) was not detained or restrained in any way.

While securing Troutman and his passenger outside the residence, the police saw a loaded magazine for a handgun. The police asked Troutman and his passenger if either possessed the gun that matched the magazine. Troutman said he did and that the gun *might* be inside the house at 4322 N. W. 203 Street, Miami, Florida. He then made a motion with his head toward the house. At about this time the police "apparently" heard someone running *from* the house and heard the rattling of a chain link fence. These noises "apparently" came from the back of the house.

The officers who arrested Troutman and his passenger remained, with their arrestees, outside the house until additional officers arrived. After these additional officers arrived, the police entered the house. They did not have a warrant or anyone's consent to do so. During the ensuing search of the house the police saw a gym bag under a bed, opened the gym bag, and saw cocaine and marijuana inside the gym bag. This discovery is described in Paragraph 11 of the "Affidavit In Support of Application

For A Search Warrant" ("Affidavit" hereafter) Miami-Dade Police Det. Kipple later submitted in connection with his request for a search warrant for the house.

> Paragraph 12 of Det. Kipple's Affidavit makes it indisputable that the discovery of the contents of the gym bag provided the primary probable cause for the search warrant.  Based upon the facts set forth above, your affiant respectfully suggests that there is probable cause to believe that *additional* controlled substances are contained within one or more confined and discreet areas of the premises which were not subjected to inspection and visual observation on account of the limited nature of the protective sweep which had been performed.  Your affiant bases this belief, not only upon the fact that a large amount of cocaine has already been recovered from at least one area within the premises, but also the fact that the offense for which Troutman was charged in relation to the aforementioned arrest warrant included a charge of possession to distribute cocaine.

Because the cocaine was discovered during a warrant-less, non-consensual, and thus unconstitutional search, information about this discovery cannot be used to establish probable cause for the second, warrant-authorized search of 4322 N. W. 203 Street, Miami, Florida.  Segura v. United States, 468 U.S. 796 (1984)  And, because this information was the sole information in the Affidavit that established probable cause, the "good faith" exception announced in United States v. Leon, 487 U.S. 897 (1984), cannot save the second search because the warrant pursuant to which it was conducted was itself a "fruit" of the first unconstitutional entry and search.  United States v. McGough, 412 F. 3d 1232, 1240  (11th Cir. 2005).

Memorandum of Law

A.

The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures.  Vindication of this right is provided by the warrant requirement of the Fourth Amendment which requires that any search or seizure intruding upon an individual's privacy be justified by probable cause as determined by a neutral and detached magistrate.  Johnson v. United States, 333 U.S. 10, 14 (1948). Accordingly, the general rule is, and has been, that a warrant-less search is *per se* unreasonable under the Fourth Amendment.  United States v. United States District Court, 407 U.S. 297 (1971).

> Thus the most basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specificity established well-delineated exceptions.  Coolidge v. New Hamsphire, 403 U.S. 443, 454-5 (1971).

See also:  California v. Acevedo, 500 U.S. 565, 581 (1991) ("It remains a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.").  The government bears the burden of establishing the constitutionality of the *per se* warrant-less entry and search of 4322 N. W. 203 Street, Miami, Florida.  United States v. McGough, 412 F. 3d at 1237 fn. 4.

As the United States Supreme Court has consistently stated, the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.  Johnson v. United States, 333 U.S. at 17-18; United States v. United States District Court, 407 U.S. at 313; Payton vs. New York, 445 U.S. 573, 585 (1980);

Maryland v. Buie, 494 U.S. 325, 341 (1990).  This case thus squarely implicates this core concern of the Fourth Amendment.  United States v. McGough, 412 F. 3d at 1236.

B.

The location of the arrest of Troutman makes this case unlike Maryland v. Buie, *supra*, which addressed a warrant-less, non-consensual search after an in-house arrest.  As the Eleventh Circuit noted in United States v. McGough the exception set forth in Maryland v. Buie is limited to facts unlike those of this case.

> ...there are some situations where "the public interest requires some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search ." *Holloway,* 290 F.3d at 1334 (quoting *Arkansas v. Sanders,* 442 U.S. 753, 759, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979)).  But we will depart from the general rule requiring a warrant as a prerequisite for a search in only a few, exceptional circumstances.  For example, we have explained that police officers have the right in certain instances to conduct a limited, protective search if they are executing an arrest warrant in a person's home. *United States v. Hromada,* 49 F.3d 685, 690 (11th Cir.1995). We recognized that police officers often face greater risks when arresting someone in their home, as opposed to on the street, and therefore are permitted "to take reasonable steps to ensure their safety after, and while making, the arrest." Id. (quoting *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990)). 412 F. 3d at 1237.

Rather, this case is like Vale vs. Louisiana, 399 U.S. 30 (1970), in which the police arrested the defendant's outside his house, at the front steps, just after they saw him sell  narcotics and as he was walking toward the house.  After the arrest, the police officers entered the house without a warrant, searched it and found more narcotics.

The United States Supreme Court reversed the defendant's conviction, holding that "no precedent of this Court can sustain the constitutionality of the search in the case before us."  399 U. S. at 33.  The Supreme Court expressly rejected the notion that

7

the requisite "exigent circumstance" to justify the warrantless search of the house existed because heroin, a substance which is easily removed, hidden or destroyed, was involved.  399 U.S. at 34.  The Court so held notwithstanding the fact the defendant's mother and brother entered the residence after the defendant's arrest and before the search.  Rather, the Court held because (1) there was no showing it was impractical for the police to obtain a search warrant for Vale's house and (2) there was no showing that an exigency existed, the admission of the fruits of the warrantless non-consensual search of Vale's residence into evidence constituted constitutional error. 399 U.S. at 35.   See also: Segura v. United States, 468 U.S. 796, 817 (1984) (Noting speculation that evidence would or could be removed or destroyed does not constitute exigent circumstances to justify a warrantless non-consensual entry into a home after its occupants were arrested outside the premises.); United States v. Santa, 236 F. 3d 662, 669 (11th Cir. 2000)(The exigency exception only applies when " the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.").

In the instant case, there was no probable cause to believe evidence of Troutman's alleged criminality would be found at 4322 N. W. 203 Street, Miami, Florida. If there was, the police could have brought along a search warrant with the arrest warrant.  Their failure to do so forecloses any real argument that an exception to the warrant requirement that relies upon probable cause can be applied in this case. Simply put, the first search of the house was unconstitutional under Vale v. Louisiana, *supra,* and the observations and seizures made during this intrusion, which are

described in Paragraph 11 of Det. Kipple's "Affidavit In Support of Application For A Search Warrant," must be suppressed.

C.

Finally, any argument that because the second search was conducted pursuant to a search warrant its fruits do not have to be suppressed under the "good faith" exception announced in United States v. Leon, 487 U.S. 897 (1984), must be rejected as a matter of law. As the Eleventh Circuit held in United States v. McGough, the officers' original unlawful entry into the house forecloses reliance on Leon's "good faith" exception.

> In this case, it was not an "objectively reasonable law enforcement activity" but rather the officers' unlawful entry into McGough's apartment that led to Officer Brock's request for a search warrant. In such a situation, "the search warrant affidavit was tainted with evidence obtained as a result of a prior, warrantless, presumptively unlawful entry into a personal dwelling." *United States v. Meixner,* 128 F.Supp.2d 1070, 1078 (E.D.Mich.2001); *see also United States v. Wanless,* 882 F.2d 1459, 1466 (9th Cir.1989) (noting that "good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search"); *United States v. Reilly,* 76 F.3d 1271, 1280 (2nd Cir.1996) (declining to apply the good faith exception when the "issuance of the warrant was itself premised on material obtained in a prior search that today's holding makes clear was illegal"). Because the officers were not permitted to enter McGough's apartment under these circumstances, without a warrant and without his consent, we find the exclusionary rule is applicable. 412 F. 3d at 1240.

Clearly, after United States v. McGough, there can be no good faith reliance on a search warrant that is obtained based upon information from a prior warrant-less and unlawful intrusion into a Fourth Amendment-protected area.

WHEREFORE, under the circumstances of this case, all the evidence the government obtained as a result of the warrant-less entry and search of the house, including, but not limited to, the cocaine, marijuana, *and* the search warrant, must be suppressed. United States v. McGough, 412 F. 3d at 1239 ("The exclusionary rule operates to prevent the government from using evidence seized as the result of an illegal search in a subsequent criminal prosecution.").

Respectfully submitted,
**LAW OFFICES OF STEPHEN H. ROSEN, P.A.**
1221 Brickell Avenue, Suite 1020
Miami, Florida 33131
Ph: (305) 358-6789

s/Stephen H. Rosen
STEPHEN H. ROSEN
Counsel for Defendant
Florida Bar No. 154144
E-MAIL: ATTNYROSEN@AOL.COM

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 24, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/Stephen H. Rosen
STEPHEN H. ROSEN